UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMELIA GAMEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-919 |
| | § | |
| WELLS FARGO BANK, N.A., *et al*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court is Defendants' Motion for Summary Judgment[1] (Doc. 23) filed by Wells Fargo Bank, N.A.[2] ("Wells Fargo") and Federal National Mortgage Association ("FNMA") (collectively, "Defendants") against all claims made by Bernardo Gamez and Amelia Gamez (collectively, "Plaintiffs").

Having considered the motion and the response thereto, the facts in the record, and the applicable law, the Court concludes that the motion should be granted.

I. Background

The primary documentary evidence in this foreclosure case is uncontroverted: the promissory note ("Note," Doc. 23-2 Ex. A); the deed of trust ("Deed," Doc. 23-3 Ex. B); and the notices of acceleration and of substitute trustee sale (collectively, "Notice of Sale," Doc. 23-5

---

[1] Defendants style their motion as "Defendants' Motion for Summary Judgment and Motion to Dismiss with Prejudice Pursuant to FRCP 12(b)(6) and 12(b)(9) [sic]" and, on some causes of action, only move to dismiss for failure to state a claim. Both Defendants and Plaintiffs, however, present matters outside the pleadings, and Plaintiffs cite that evidence in defense of each of their causes of action; therefore, the Court deems it appropriate to consider all evidence presented and address the entire motion under the summary judgment standard. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 435 (5th Cir. 2000) ("The district court may enter summary judgment sua sponte if the parties are provided with reasonable notice and an opportunity to present argument opposing the judgment.").
[2] "In 2009, Wachovia Mortgage ['Wachovia'] formerly known as World Savings Bank, FSB, the original lender, merged with Wells Fargo Bank, N.A.." Mot. ¶ 1.

Ex. D; Doc. 23-6 Ex. E). To supplement this evidence and support their claims, Plaintiffs submit testimony through the sworn affidavit of Amelia Gamez (October 19, 2011, Doc. 32-2 Ex. B). According to that testimony, the facts of the case are as follows:

    On or about July 15, 2000, Bernardo and Amelia Gamez purchased real property located at 715 Elm Street, Fresno, Fort Bend County, Texas 77053 (the "Property") for $50,000. Gamez Aff. ¶ 2. From 2000 to 2007, Amelia Gamez made improvements to the Property, spending over $500,000 in material and labor to complete those improvements and borrowing much of that money from her family. *Id.* ¶¶ 5, 7. In order to repay those family debts, she sought a home equity loan from Wachovia, but instead, because she was "not allowed to read or review" the documents before signing, unknowingly received a conventional loan of $200,000.[3] *Id.* ¶¶ 8, 11. In exchange for the loan, on or about December 27, 2007, Bernardo Gamez executed the Note in favor of Wachovia, and Bernardo and Amelia Gamez executed the Deed encumbering the Property to secure payment of the Note.

    The Deed included a "Property Insurance" clause, stating that "[i]f Borrower fails to maintain any of the [required coverage], Lender may obtain insurance coverage, at Lender's option and Borrower's expense." Deed ¶ 5. In 2008, when Plaintiffs did, in fact, fail to maintain coverage, Wachovia exercised this option and "force-placed" insurance, increasing Plaintiffs' payment $500 per month. Gamez Aff. ¶ 12. Amelia Gamez "immediately" obtained the required

---

[3] The parties disagree whether the loan should be defined as "home equity" or "purchase money." Plaintiffs claim they sought and obtained a home equity loan—or, at least, what they believed to be a home equity loan. Gamez Aff. ¶¶ 2, 6, 8, 11. Defendants, on the other hand, describe it as a purchase money loan. Mot. ¶ 1. The dispute is potentially significant, as the Texas Constitution imposes more and stricter requirements on lenders that extend credit in the form of home equity loans, and failure to comply with such requirements can result in the lender's forfeiture of all principal and interest. Tex. Const., art. XVI, § 50(a)(6); *see also Vincent v. Bank of Am., N.A.*, 109 S.W.3d 856, 862 (Tex. App. 2003). The dispute is not genuine, however, as the Deed explicitly defines the loan as neither home equity nor purchase money, but as "cash advanced against non-homestead property." Deed ¶¶ 27-28. Therefore, regardless of what Plaintiffs hoped to receive or believed they received, the signed documentary evidence shows what, in fact, existed: a conventional lien against the Property not covered by the homestead protections of the Texas Constitution.

coverage and had proof of such coverage sent to Wachovia, but, she claims, Wachovia continued to improperly charge and collect payments reflecting the $500-per-month increase. *Id.* According to Gamez, despite her attempts to correct this error induced by the force-placed insurance, it was never resolved, and Plaintiffs continued to make increased payments until November 2009, when they no longer could afford to do so in. *Id.* ¶¶ 12-16.

Beginning in October 2009, Plaintiffs repeatedly called Wells Fargo[4] to modify the loan but, despite being told that they qualified for modification, did not receive an application until February or March 2010. *Id.* ¶¶ 16-18. Plaintiffs faxed their application to Wells Fargo in March but never received a response; instead, in June 2010, they received the Notice of Sale.[5] Gamez Aff. ¶¶ 18-19. When Plaintiffs phoned Wells Fargo, they were told that the foreclosure sale would not take place because the loan was in the process of modification, but in fact, on July 6, 2010, the Property was sold at a foreclosure auction. Gamez Aff. ¶¶ 19-22.

Plaintiffs filed this suit in Harris County District Court on July 23, 2010, but did not serve Defendants until March 2011. Mot. ¶¶ 9-10. On March 11, 2011, Defendants removed the case to this Court. Defs.' Notice of Removal, Doc. 1. On October 19, 2011, Plaintiffs submitted their

---

[4] In October 2009, Wachovia informed Amelia Gamez that the Note had been transferred to Wells Fargo. Gamez Aff. ¶ 15.
[5] Plaintiffs claim that they did not receive the Notice of Sale until sometime in June 2010, Gamez Aff. ¶ 19, though Defendants submit proof of mailing by certified mail on April 15, 2010, Proof of Mailing, Doc. 23-7 Ex. F; Howell Aff. ¶ 6, Doc. 23-10 Ex. I. Accepting Plaintiffs' claim as true, it is nonetheless immaterial, as the only relevant fact is the date of mailing:

> (b) [N]otice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:
> . . . .
> (3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.
> . . . .
> (e) Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address.

Tex. Prop. Code § 51.002(b), (e).

Second Amended Complaint ("Complaint," Doc. 14), asserting causes of action for: promissory estoppel; common law fraud; statutory fraud; fraudulent misrepresentation; negligence; gross negligence; negligent misrepresentation; violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"); violations of the Texas Debt Collection Act ("TDCA"); wrongful foreclosure; and breach of contract. On June 11, 2012, Defendants filed their motion for summary judgment, arguing that the material facts are contained in the documentary evidence and that Plaintiffs' allegations of oral promises fail to create a genuine dispute of those facts.

II. Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing the claims determines the elements essential to the outcome of the case and thus determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over such a fact is genuine if the evidence presents an issue "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250.

The moving party bears the burden of identifying evidence that no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where the nonmovant bears the burden of proof at trial, the movant need only point to the absence of evidence supporting an essential element of the nonmovant's case; the movant does not have to support its motion with evidence negating the case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant succeeds, the nonmovant can defeat the motion for summary

judgment only by identifying specific evidence of a genuine issue of material fact. *Anderson*, 477 U.S. at 248-49.

### III. Analysis

*1. Promissory Estoppel*

Under Texas law, if the elements of promissory estoppel are met, then a promisee may enforce an otherwise unenforceable agreement. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 549 (5th Cir. 2010) (quoting *Transcon. Realty Investors, Inc. v. John T. Lupton Trust*, 286 S.W.3d 635, 648 (Tex. App.—Dallas 2009, no pet.)). A claim for promissory estoppel must show: (1) a promise, (2) foreseeability of reliance by the promisor, and (3) substantial reliance by the promisee to his or her detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). Where an agreement that is the subject of an oral promise is governed by the statute of frauds, that agreement must already be in writing at the time of the promise. *Sullivan*, 600 F.3d at 549 (quoting *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 438 (Tex. App.—Dallas 2002, pet. denied)). Among the agreements to which the statute of frauds applies are contracts for the sale of real estate, Tex. Bus. & Com. Code § 26.01, "loan agreements," such as deeds of trust, involving more than $50,000 in value, § 26.02(b), and material modifications to such documents, *Gordon v. JPMorgan Chase Bank, N.A.*, No. 12-20323, 2013 WL 49587, at *4 (5th Cir. Jan. 3, 2013) (citing *Dracopoulas v. Rachal*, 411 S.W.2d 719, 721 (Tex. 1967)).

Here, the underlying agreements are the Note and Deed, both of which fall within the definitions outlined by the statute of frauds, and the underlying action is the foreclosure sale, which was scheduled pursuant to those agreements. At issue is Wells Fargo's alleged promise that the foreclosure sale would not take place as scheduled on July 6, 2010, an oral promise that Plaintiffs claim was made during telephone calls in June and July 2010. Gamez Aff. ¶¶ 20-21.

This promise would itself be subject to the statue of frauds as an "agree[ment] to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation" involving more than $50,000, § 26.02(a)-(b); consequently, a claim for enforcement can be sustained only if a written agreement animating the oral promise existed at the time the promise was made. No such writing is in evidence, and, absent such evidence, Plaintiffs' claim must fail and summary judgment must be granted. *See Gordon*, 2013 WL 49587, at *4 ("Where . . . an oral promise is barred by the statute of frauds, to show promissory estoppel the promisor must have 'promised to sign [an already existing] written document that would satisfy the statute of frauds.'" (quoting *Ford v. City State Bank of Palacios*, 44 S.W.3d 121, 140 (Tex. App.—Corpus Christi 2001, no pet.))).

    *2. Common Law Fraud, Statutory Fraud, and Fraudulent Misrepresentation*

Plaintiffs assert against Wells Fargo claims of common law fraud,[6] statutory fraud in a real estate transaction,[7] and fraudulent misrepresentation.[8] All these claims are founded on two

---

[6] The elements of common law fraud are:

> (1) a material representation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that it should be acted upon by the party; (5) the party acted in reliance upon the representation; and (6) the party thereby suffered injury.

*Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990).

[7] The elements of fraud in a real estate transaction are:

> (1) false representation of a past or existing material fact, when the false representation is
>   (A) made to a person for the purpose of inducing that person to enter into a contract; and
>   (B) relied on by that person in entering into that contract; or
> (2) false promise to do an act, when the false promise is
>   (A) material;
>   (B) made with the intention of not fulfilling it;
>   (C) made to a person for the purpose of inducing that person to enter into a contract; and
>   (D) relied on by that person in entering into that contract.

Tex. Bus. & Com. Code § 27.01(a).

[8] The elements of fraudulent misrepresentation are: "(1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable

allegedly false oral statements, that the original loan was a home equity loan and that the foreclosure sale would not take place as scheduled. Compl. ¶¶ 58, 68. As a result, all fail for the same reason articulated above: the statute of frauds. *See* Tex. Bus. & Com. Code § 26.02(d) ("[A loan agreement] may not be varied by any oral agreements or discussions that occur before or contemporaneously with the execution of the agreement." (footnote omitted)); *see also Wilson v. Dallas Cowboys Football Club, Inc.*, 50 F.3d 1033, at *1-2 (5th Cir. 1995) (collecting cases); *Hawkins v. Walker*, 233 S.W.3d 380, 396 (Tex. App. 2007) ("A fraud claim is barred by the statute of frauds . . . when the plaintiff seeks to obtain the benefit of the bargain that he would have obtained had the defendant's promise been performed."); *Leach v. Conoco, Inc.*, 892 S.W.2d 954, 960 (Tex. App. 1995) (same); *Collins v. Allied Pharmacy Mgmt., Inc.*, 871 S.W.2d 929, 936 (Tex. App. 1994) ("Application of the statute of frauds to a contract vitiates a fraud claim based on the same facts."). Plaintiffs made the same factual allegations when applying for a temporary restraining order, arguing that they should not be held to the terms of the loan because, not having read it, they believed it to be something else. *See* Pls.' Mem. Supp. Mot. TRO ¶ 7, Doc. 9; Gamez Aff. ¶ 11. The Court's conclusion is as applicable now as it was then: parties are presumed to have read and agreed to contracts that they signed, and failure to do so is not grounds for avoiding their obligations under that contract. Order 1-2, Oct. 11, 2011, Doc. 13. The bottom line is that there is a written contract, and Plaintiffs' allegations of oral misrepresentations regarding its terms and enforcement of those terms are, as a matter of law, insufficient to create a genuine factual dispute.

   *3. Negligence and Gross Negligence*

  "Under Texas law, the elements of a negligence claim are (1) a legal duty on the part of

---

reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)).

the defendant; (2) breach of that duty; and (3) damages proximately resulting from that breach." *Lane v. Halliburton*, 529 F.3d 548, 565 (5th Cir. 2008) (internal quotation marks omitted). When, however, "the injury is only the economic loss to the subject of a contract itself"—as it is here—the economic loss rule applies and "the action sounds in contract alone," not in negligence. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 417 (Tex. 2011) (quoting *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991)). Plaintiffs do not argue that the economic loss rule bars negligence claims arising solely from the Note and Deed, but instead argue that other duties arose and other harms resulted from circumstances beyond the Note and Deed; specifically, that Defendants owed them a duty under the Home Affordable Modification Program ("HAMP") and that Amelia Gamez has suffered mental anguish. Neither argument is persuasive.

The first question is whether HAMP imposed on Defendants a legal duty independent of their contract with Plaintiffs. *See Sw. Bell Tel. Co.*, 809 S.W.2d at 494 ("If the defendant's conduct . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort."). Plaintiffs argue in the affirmative because the underlying loan modification program "is not part of any contract between . . . Wells Fargo and Plaintiffs, but rather an agreement between Wells Fargo and the U.S. Department of the Treasury . . . to reasonably manage and implement [HAMP]." Pls.' Resp. ¶ 21. Although this argument provides a basis for finding obligations to the U.S. Government, it does not provide one for finding a legally actionable duty of care owed to borrowers; nor do Plaintiffs offer any legal authority to support such a proposition. On the contrary, the overwhelming majority of courts that have considered the issue have come to the opposite conclusion, even finding legislative intent to shield lenders from liability so as to encourage their participation in HAMP.

*See Markle v. HSBC Mortg. Corp. (USA)*, 844 F. Supp. 2d 172, 185 (D. Mass. 2011) ("To find a legal duty [under HAMP] . . . would not accord with Congress's intent."); *see also Ahmad v. Wells Fargo Bank, NA*, 861 F. Supp. 2d 818 (E.D. Mich. 2012) (dismissing negligence claim under HAMP); *Mortberg v. Litton Loan Servicing, L.P.*, No. 4:10-CV-668, 2011 WL 4431946 (E.D. Tex. Aug. 30, 2011) (same), *report and recommendation adopted*, 2011 WL 4440170 (E.D. Tex. Sept. 22, 2011). The inescapable conclusion is that the subject of the loan modification would be the same as the subject of the loan itself; accordingly, any "injury" suffered from an unsuccessful modification application would be the same economic loss appropriately governed by contract law, not tort law.

Regarding Plaintiffs' second argument, "Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish" and carves out exceptions only for limited cases involving "intent or malice on the defendant's part, serious bodily injury to the plaintiff, . . . a special relationship between the two parties, [or] injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result." *City of Tyler v. Likes*, 962 S.W.2d 489, 494-96 (Tex. 1997). Plaintiffs offer no evidence that would place their claims within these limited cases and free them from the economic loss rule; therefore, Plaintiffs' negligence claim fails as a matter of law.[9]

Finally, "[g]ross negligence is a heightened form of negligence which requires proof of 'an extreme degree of risk' and a 'conscious indifference' by the negligent actor." *Lane*, 529 F.3d at 565 (citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998)). As Plaintiffs

---

[9] Although the Court accepts the language as an accurate statement of the law, it is unable to find the language in *American National Insurance Co. v. International Business Machines Corp.*, 933 S.W.2d 685 (Tex. App. 1996). No part of the phrase that Defendants claim to quote from that opinion, "There is a contract between the parties (the Note and Deed of Trust), and any duty, if any, 'to properly and accurately review [and approve] the loan modification' arises from that contract," Mot. ¶ 74 (quoting *Am. Nat. Ins. Co.*, 933 S.W.2d at 686), appears in the cited case. Moreover, a search has revealed multiple instances of Defendants' filings in other cases that contain this incorrect citation.

cannot establish the elements of negligence, they likewise cannot establish the elements of its heightened form, gross negligence, and neither claim can survive summary judgment.

*4. Negligent Misrepresentation*

Plaintiffs assert a claim of negligent misrepresentation[10] based on Wells Fargo's alleged statements that the foreclosure sale was canceled, but this cause of action also fails because of both the economic loss rule and the statute of frauds. First, "the Texas Supreme Court has clearly stated that a claim for negligent misrepresentation can proceed only if there is an injury to the plaintiff independent of his contractual damages." *Metro. Life Ins. Co. v. Haden & Co.*, 158 F.3d 584, at *7 (5th Cir. 1998) (citing *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex. 1998)). Because Plaintiffs' damages all stem directly from their economic losses under the Note and Deed, or from alleged oral promises of material changes to those documents, their negligent misrepresentation claim sounds in contract alone. *See id.* Second, "a claim of negligent misrepresentation may not be used to circumvent the statute of frauds," *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); therefore, if the "claim sounds in contract, it is barred by the statute of frauds," *Metro. Life Ins. Co.*, 158 F.3d 584, at *7. Like the claims above, this is, in essence, an attempt to circumvent the statute of frauds, and, like the claims above, it cannot succeed. Plaintiffs offer no evidence creating a genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law.

*5. Texas Deceptive Trade Practices-Consumer Protection Act (DTPA)*

---

[10] The elements of negligent misrepresentation are that:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

The purpose of the Deceptive Trade Practices-Consumer Protection Act is to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty." Tex. Bus. & Com. Code § 17.44. "Generally, a person cannot qualify as a consumer [under the DTPA] if the underlying transaction is a pure loan because money is considered neither a good nor a service." *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147, 160 (Tex. App. 2007) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173-74 (Tex. 1980) (holding that refinancing a car loan does not confer consumer status on the debtor)). More precisely, "subsequent actions related to mortgage accounts . . . do not satisfy the 'good or services' element of the DTPA," *Broyles v. Chase Home Fin.*, No. 3:10–CV–2256–G, 2011 WL 1428904, at *4 (N.D. Tex. Apr.13, 2011), and such subsequent actions include loan modifications under HAMP, *Montalvo v. Bank of Am. Corp.*, 864 F. Supp. 2d 567, 595 & n.69 (W.D. Tex. 2012) ("Texas federal courts have . . . concluded that a person seeking a loan modification under the HAMP using a loan servicer is not a consumer under the DPTA." (collecting cases)). Plaintiffs' argument and supporting evidence are based entirely on loan modification services under HAMP, *see* Pls.' Resp. ¶ 79; therefore, Plaintiffs have no evidence to sustain a cause of action under the DTPA.

*6. Texas Debt Collection Act (TDCA)*

The Texas Debt Collection Act states that "a debt collector may not . . . represent[ ] falsely the status or nature of the services rendered by the debt collector or the debt collector's business." Tex. Fin. Code § 392.304(a)(14).[11] Plaintiffs allege that Wells Fargo violated this section of the TDCA by representing that "their [loan] modification department existed to assist

---

[11] Originally, Plaintiffs stated claims under §§ 392.301, 392.302, and 392.304(a)(14) of the TDCA, but in their response to Defendant's motion, they defend only the last claim, thereby abandoning the others. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (finding that failure to defend a claim in response to a motion to dismiss constituted abandonment (citing *Vela v. City of Houston*, 276 F.3d 659, 679 (5th Cir. 2001)).

Plaintiffs, when in fact it failed Plaintiffs and most likely others in their position." Pls.' Resp. ¶ 75. The bare facts of Plaintiffs' unsuccessful application, however, are insufficient to justify a leap to the legal conclusion that Wells Fargo misrepresented the status or nature of its services. Wells Fargo was not required to modify Plaintiffs' loan, and Plaintiffs were not automatically entitled to a loan modification. The assertion that Defendants "failed Plaintiffs" simply does not equate to, or support a claim of, false representation of debt collection services. It is possible for a business to both lend money and collect debts, but it is not possible to sustain a TDCA claim based on this fact alone.

### 7. Wrongful Foreclosure

Under Texas law, the elements of wrongful foreclosure are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Pollett v. Aurora Loan Servs.*, 455 F. App'x 413, 415 (5th Cir. 2011) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App. 2008)). Plaintiffs contend that the first element is satisfied because

> Wells Fargo's acts, omissions and statements . . . resulted in Plaintiffs' failure to react to the foreclosure sale. Consequently, neither Plaintiffs nor anyone who might have attended and acted on their behalf, appeared for the bidding process at the foreclosure sale. No one, to Plaintiffs [sic] knowledge, bid on the Property except Defendants themselves, resulting in a defect in the foreclosure proceeding.

Pls.' Resp. ¶ 40. Plaintiffs admit, however, that "they received a notice of foreclosure in June 2010, for a foreclosure sale on July 6, 2010," Pls.' Resp. ¶ 35, and, as discussed above, their allegations of oral statements promising cancellation of the foreclosure sale are unavailing. Absent evidence of an actual defect, Plaintiffs cannot maintain a claim for wrongful foreclosure, and Defendants are entitled to summary judgment on this claim.

### 8. Breach of Contract

Under Texas law, "the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001)) (alteration and internal quotation marks omitted). Defendants challenge Plaintiffs' claim, arguing that Plaintiffs cannot establish the second element because they "admit that they failed to timely remit payments." Mot. ¶ 27. This admission does not, however, automatically void Plaintiffs' claim, as "[a] fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform." *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). Plaintiffs' sworn allegation is that Defendants committed the first material breach by wrongfully force-placing insurance and continuing to charge for it, even after Plaintiffs "immediately" obtained the required coverage from Pacific Insurance and had proof of such coverage sent to Wachovia, Gamez Aff. ¶ 12, thereby "result[ing] in unjustified and unusually high payments" and, eventually, in default, Pls.' Resp. ¶ 32.

There is little evidence in the record on the matter, but what little evidence there is serves to undermine Plaintiffs' argument. Regarding the parties' contractual obligations, there is the Deed itself; regarding their performance, there is only the affidavit of Amelia Gamez. The Deed includes a "Property Insurance" clause, stating that:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss . . . . This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. . . . If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.

Deed 5. Gamez admits that Plaintiffs failed to maintain the required insurance coverage around January 2008 and does not deny Wachovia's right to then force-place insurance. Gamez Aff. ¶ 12. From that admission alone, it can be ascertained that Plaintiffs, not Wachovia, were the party that first failed to perform. Furthermore, Plaintiffs do not cite any contractual language stating that their subsequent acquisition of insurance would cure their breach and require Wachovia to cancel the force-placed insurance in favor of theirs. Finally, even Plaintiffs' claim that their subsequent insurance was sufficient is undermined by their own admission. In describing the aftermath of Hurricane Ike in September 2008, Gamez states:

> The adjuster for Pacific visited the Property, and he expressed amazement at the quality and construction of the residences. He followed up with a letter stating the Property was, according to Pacific, underinsured . . . . Because of this underinsurance, I received an Ike settlement check in the amount of $7,000.00, which was much less than the actual estimate of damages of $70,000.00.

*Id.* ¶ 12. This incident illustrates Plaintiffs' continued failure to adequately insure the Property and Wachovia's legitimate interest in protecting its collateral, as expressed by the contract's coverage requirement and its remedies in the event of a lapse of such coverage. It also shows that there is no dispute of material fact, and the undisputed facts entitle Defendants to judgment as a matter of law.

### IV. Conclusion

For the foregoing reasons, the Court hereby

ORDERS that Defendants' Motion for Summary Judgment (Doc. 23) is GRANTED and all claims are DISMISSED.

SIGNED at Houston, Texas, this 12th day of March, 2013.

                              MELINDA HARMON
                             UNITED STATES DISTRICT JUDGE